HANNAH A. HOLCOMB v. INDEPENDENT SCHOOL DISTRICT OF DULUTH.[1]

February 1, 1897.

Nos. 10,249—(255).

**Dower—Estoppel—Evidence.**

The plaintiff's husband, in 1877, while living apart from her,—he at Duluth, she in the state of Michigan,—conveyed the lot here in question to P. by his sole deed, which was recorded, and wherein he represented and recited that he was unmarried. He was so reputed at Duluth until his death, in 1882, when the plaintiff came to Duluth, remaining six months, during which time the defendant was in possession of the lot as a site for its schoolhouse, having acquired, as it supposed, the entire title from P. by condemnation, for which it paid him its then full value. While at Duluth plaintiff learned of this deed and record, and the representation therein made, but gave no notice of her claim to the lot, or that her husband was not a single man, to the defendant or any one else, and abandoned the lot, went back to Michigan, and never asserted any claim thereto until the commencement of this action in 1895. In the meantime the lot increased in value tenfold, and the defendant, in good faith relying on the representation in the deed, built, on a site of which this lot is a part, a new high school building at a cost of $350,000.

*Held,* that the plaintiff is now estopped by her conduct from asserting any title to the lot.

*Held,* that it was not error for the trial court to receive evidence to the effect that the husband was generally reputed to be a single man.

Evidence considered, and *held* sufficient to sustain the findings of fact herein.

Appeal by plaintiff from an order of the district court for St. Louis county, Morris, J., denying a motion for a new trial. Affirmed.

*White & McKeon,* for appellant.

In condemnation proceedings a judgment can bind a person only when he is a party to the proceedings. When an interested party is omitted the proceeding is nugatory as to him. State v. Easton & A. Ry. Co. 36 N. J. Law, 181; Columbus & W. Ry. Co. v. Witherow, 82 Ala. 190, 3 South. 23; Smith v. Chicago, A. & St. L. R. Co., 67 Ill. 191; Lane v. Miller, 17 Ind. 58; Garmoe v. Sturgeon, 65 Iowa, 147, 21 N. W.

[1] Reported in 69 N. W. 1067.

67 M.—21

493; Detroit, M. & T. R. Co. v. Detroit, 49 Mich. 47, 12 N. W. 904; Hagar v. Brainerd, 44 Vt. 294; Moore v. Mayor, 8 N. Y. 110. But see Lewis, Em. Dom. § 323. Estoppel in pais can be invoked only when a party has been guilty of no fraud. Titus v. Morse, 40 Me. 348.

*Walter Ayers*, for respondent.

It is competent for the legislature to authorize land to be condemned by a municipal corporation and devest any inchoate right of dower. 2 Dillon, Mun. Corp, § 594; Moore v. Mayor, 8 N. Y. 110; Simar v. Canaday, 53 N. Y. 298; Wheeler v. Kirtland, 27 N. J. Eq. 534; Randolph, Em. Dom. § 302; Morrison v. Rice, 35 Minn. 436, 29 N. W. 168. The language of the statute under which the condemnation was made is the same or similar to the acts construed in New York and New Jersey.

The statute of limitations has run against the claim of plaintiff. G. S. 1894, § 5134; Seymour v. Carli, 31 Minn. 81, 16 N. W. 495.

The widow takes as heir of her husband. Scott v. Wells, 55 Minn. 274, 56 N. W. 828; In re Swenson's Estate, 55 Minn. 300, 56 N. W. 1115; G. S. 1894, § 4469. When title against the husband is obtained by adverse possession for fifteen years, the widow is bound by the adverse title secured against her husband.

START, C. J. This is an action for partition of a lot in the city of Duluth, of which the plaintiff claimed to be the owner of one undivided third, and conceded that the defendant was the owner of the other two-thirds. The trial court found that the defendant owned the whole lot, and ordered judgment accordingly. The plaintiff appealed from an order denying her motion for a new trial.

The errors assigned, stated concisely, are that the trial court erred in its rulings on the admission of evidence, that it erred in its findings of fact, and that its conclusion of law is not justified by the facts found. The alleged errors will be considered inversely.

1. The material facts, as found by the trial court, are: The plaintiff is the widow of Martin T. Holcomb, who died April 25, 1882, at Duluth, where he had resided for eight to ten years next before his death. The plaintiff never resided with or visited her husband at Duluth, but during the time stated she lived in the state of Michigan. Holcomb, during his residence at Duluth, was reputed to be an unmarried man, and so represented himself. He was the owner of the

lot in question, and on April 4, 1877, conveyed it to Michael Pas-
toret by warranty deed, which was duly recorded, and in which he
described himself as an unmarried man.    The defendant, July 29,
1881, condemned the lot for a schoolhouse site; but in its proceed-
ings for that purpose Pastoret only was made a party, as he was the
only person claiming the lot, or appearing of record to have any
title thereto.    The damages for the entire lot were assessed at $200,
its then full value.   The defendant paid this total amount to Pastoret
September 21, 1881, and immediately went into possession of the
lot, and proceeded to erect a schoolhouse upon the lot and others
adjoining it.    Only a part of the building was on the lot in question.
The defendant has ever since been in the possession of the lot.

Shortly after her husband's death, and in the year 1882, the plain-
tiff came to Duluth and remained six months, during which time she
had an administrator appointed on her husband's estate, and caused
an investigation to be made as to the property which her husband
had left, and the condition thereof.    For this purpose she employed
the administrator and an attorney at law, and was informed at this
time, by each of them, after such investigation, that her husband
had at one time owned the lot in question, and had conveyed the
same, describing himself in the deed as an unmarried man.    She also
learned, during this visit to Duluth, that her husband had there held
himself out to be a single man, and was so reputed to be, and that as
such he had conveyed real estate belonging to him in the counties
of St. Louis and Carlton; but she asserted no claim to such real
estate, or gave notice of the fact that her husband had not been a
single man, as claimed by him, and returned to Michigan in the year
1882, where she has since continuously resided.    The value of the
lot at this time was not to exceed $200, but it is now of the value of
$2,250.    The reason why the plaintiff gave no notice of her claim to
the lot as the widow of Holcomb was that she deemed it of too little
value to warrant proceedings for the establishment of her claim.

The defendant, in the year 1890, caused the schoolhouse first
erected on the lot to be torn down, as inadequate, and erected upon
this lot and adjoining ones a high school building at a cost of $350,-
000.    The value of so much of this building as rests upon the lot in
question is $18,000.    The building cannot be divided.    The defend-
ant paid Pastoret for the lot, and took possession thereof, and has

ever since held it, and erected the two schoolhouses thereon in good faith, in reliance on the representation of Holcomb, in his deed, that he was an unmarried man, and never had any notice that he was not then unmarried, or of the plaintiff's claim to the lot, until shortly before the commencement of this action, in November, 1895. The foregoing are substantially the facts as found by the court.

The plaintiff, however, while conceding that she never asserted any claim to the lot until 1895, denies that she ever knew, prior to 1895, that her husband had made any conveyance of the lot. She also disclaims in this action any right to the improvements on the lot, and asserts no claim for actual partition of the premises, but claims that she is entitled to be paid one-third of the present value of the lot, excluding improvements. The form of the action, or the present claims or concessions of the plaintiff, can have but little, if any, bearing upon the question of the title to this lot,—a question which must be determined upon the facts found by the trial court, without reference to the form of the action. Assuming the facts found to be sustained by the evidence, the conclusion follows that the plaintiff, in 1882, advisedly abandoned her interest in the lot, and is equitably estopped by her conduct from now asserting title to the lot to the prejudice of the defendant. Bausman v. Faue, 45 Minn. 412, 48 N. W. 13; Dimond v. Manheim, 61 Minn. 178, 63 N. W. 495.

The equitable doctrine of estoppel by conduct was discussed in the Dimond case, and the general principles upon which it rests stated in these words:

"First. To create an estoppel, the conduct of the party need not consist of affirmative acts or words. It may consist of silence or a negative omission to act when it was his duty to speak or act. Second. It is not necessary that the facts be actually known to a party estopped. It is enough if the circumstances are such that a knowledge of the truth is necessarily imputed to him. Third. It is not necessary that the conduct be done with a fraudulent intention to deceive, or with an actual intention that such conduct will be acted upon by the other party. It is enough that the conduct was done under such circumstances that he should have known that it was both natural and probable that it would be so acted upon."

The facts of this case, as found by the court, clearly bring it within the rules stated. The plaintiff's husband, while he was living in one state and she in another, passes himself off as a single man, and conveys the lot as such, representing, on the face of the deed, that

he is unmarried, which representation is spread upon the records of land titles,—a continuing representation, to all parties dealing with the title to the lot, that he then had no wife, and that the entire title passed by the deed.   The defendant, in reliance upon such representation, acquired, as it believed, the entire title to the lot, and paid the full value therefor, and goes into possession of the premises, and uses them for public school purposes.   After her husband's death, the plaintiff learns these facts.   She then knows that, because the representation was and is false, she owns one-third of the lot. She then knew, or was bound to know, that the defendant was relying upon the representation as true, and that it would continue so to do until it learned that the representation was false.   Yet, because her interest was then worth less than $70, a sum she deemed insufficient to justify any assertion of her claim, she abandons it, fails to undeceive the defendant, leaves the state, pays no taxes on the lot, asserts no claim to it, and keeps silent for 13 years.   Then, after the lot has increased in value more than tenfold, and has become a part of the site of a $350,000 schoolhouse, she for the first time asserts her claim.

The plaintiff, however, claims that, inasmuch as the defendant purchased the lot, and went into possession thereof, before she knew that her husband had conveyed it as an unmarried man, and no claim being made by her in this action for any part of the improvements on the lot, the defendant has not been prejudiced by her conduct. This claim ignores the fact that, if the plaintiff had asserted her title to the lot when she first learned that, by reason of her husband's false and continuing representation, she owned one-third of the lot, the defendant's officers would not, as reasonable and prudent men, have continued to use the lot as a part of the site of defendant's high school building, upon which was subsequently erected its new building, without acquiring her interest in the lot, by purchase or condemnation, which they might then have done on payment of $70, the then value of her interest.   If she is now permitted to assert her title, the defendant, at the very least, must pay ten times $70 to perfect its title, and her interest will have escaped taxation for at least 13 years.   The trial court's conclusion of law is sustained by its findings of fact.

2. But the plaintiff assigns as error that the facts found by the

court as to her knowledge, in 1882, that her husband at one time owned this lot, and had conveyed the same, representing in the deed that he was a single man, are not justified by the evidence. '

The plaintiff testified that she never knew that her husband ever owned or conveyed this lot until the winter of 1895. She admits that she came to Duluth, as found by the trial court; but there is no denial on her part that she had an administrator of her husband's estate appointed, and that he and her attorney investigated and reported to her as to what real estate her husband had, in his lifetime, owned and conveyed. Both the administrator and the attorney were witnesses on the trial. Neither of them was able to give the details of any conversations had with the plaintiff after the lapse of so many years, but each testified to facts from which those found by the court might naturally and reasonably be inferred, especially as there was no contradiction of their testimony, other than the plaintiff's bare denial that she ever knew anything about this lot until 1895. The findings of fact are sustained by the evidence.

3. The other assignments of error relate to the rulings of the trial court on the admissions of evidence.

Those relating to the condemnation proceedings it is unnecessary to discuss, as our conclusion in this case is based upon the concession that such proceedings did not extinguish the plaintiff's title to the lot.

It is assigned as error that the court erred in receiving evidence tending to show that the plaintiff's husband, while living in Duluth, was generally reputed to be an unmarried man, and that he executed deeds, including the deed of the lot in question, in which he represented himself to be a single man. This evidence was properly received as bearing on the question of estoppel. It was competent and material, as tending to show that the defendant and Pastoret, through whom the defendant claims title to the lot, were justified in relying upon the representation, in the deed and record, that the grantor was unmarried, and as a foundation for the admission of the further evidence tending to show that the plaintiff was informed of the facts which the evidence objected to tended to establish.

Order affirmed.